**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>JAMA MIRE, )<br>)<br>Defendant. )<br>) | Cause No. 1:11-cr-15-08-WTL-KPF |

**ENTRY ON MOTIONS TO SUPPRESS**

This cause is before the Court on Defendant Jama Mire's Motion to Suppress (dkt. no. 201), Motion to Suppress Evidence (dkt. no. 202), and Supplemental Motion to Suppress Evidence (dkt. no. 256). The motions are all fully briefed, the Court held a hearing at which both evidence and argument were presented, and the parties had the opportunity to file supplemental briefs after the hearing. The Court, being duly advised, now **DENIES** the Defendant's motions for the reasons set forth below.

### I. MOTION TO SUPPRESS (dkt. no. 201)

Mire was arrested on February 17, 2011, and was interviewed by law enforcement twice that day. Mire asserts that the statements he gave during those interviews were obtained in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966) and his Sixth Amendment rights. According, he seeks to suppress evidence regarding those statements.

Under *Miranda*, "an officer cannot interview a suspect who is in custody until the suspect is notified of his constitutional rights to counsel and against self-incrimination." *U.S. v. Snodgrass,* 635 F.3d 324, 327 (7th Cir. 2011). Mire asserts that the law enforcement officers who interviewed him did not inform him of his constitutional rights and therefore he did not waive his

*Miranda* rights. In response, the Government has produced a waiver of rights form which it asserts was signed by Mire. Mire denies that he was presented with the form or that the signature on the form is his.

In a *Miranda* challenge, "a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel." *Miranda v. Arizona*, 384 U.S. 436, 475 (1966). "An express written or oral statement of waiver of [one's *Miranda* rights] is usually strong proof of the validity of that waiver," although it is neither necessary nor sufficient to establish waiver. *North Carolina v. Butler*, 441 U.S. 369, 373 (1979). Rather, the proper inquiry is "whether the defendant in fact knowingly and voluntarily waived the rights delineated in [*Miranda*]." *Id.*

FBI Special Agent Jeremy Michaels and Indianapolis Metropolitan Police Department Detective David Durant testified at the hearing regarding the instant motion that they interviewed Mire shortly after his arrest. Both witnesses testified that prior to questioning Mire, Michaels verbally advised Mire of his *Miranda* rights and presented him with an advice of rights form that sets out those rights. Durant testified that Mire indicated that he understood his rights and that he did not appear confused. Mire then signed the advice of rights form, indicating that he understood his rights and was willing to answer questions without a lawyer present. Michaels and Durant then signed the form as witnesses. While the form is dated February 17, 2011, the time was not indicated on the form; instead, the notation "not recorded" appears where the time should be.

FBI Special Agent Todd Samargia testified that he conducted a second interview of Mire later the same day. Samargia presented Mire with the signed advice of rights form and informed

him that his rights were still in effect. Mire agreed to speak to Samargia and did not indicate that he had not signed the advice of rights form.

Mire has submitted a Verified Declaration in which he contends that he was never advised of his *Miranda* rights following his arrest and that he did not sign the advice of rights form. Mire further avers that the signature on the form does not look like his signature. Mire also presented numerous documents at the hearing that contain his signature and, indeed, the signature on the advice of rights form–and specifically the way the letter "J" is formed–does differ from the signature on those documents. However, Mire's signature across the various documents is not entirely consistent. Further, the difference in the signature on the advice of rights form can be explained by the fact that Mire was handcuffed when he signed it.

The Court finds the hearing testimony of law enforcement officers Michaels, Durant, and Samargia to be credible. Therefore, the Court finds that Mire was verbally advised of his *Miranda* rights by Michaels and that Mire signed the advice of rights form prior to being questioned by Michaels and Durant. The Court further finds that Samargia reminded Mire of his *Miranda* rights prior to questioning him.

Furthermore, the Court finds that Mire knowingly, intelligently, and voluntarily waived his *Miranda* rights, and consequently his Sixth Amendment rights, prior to both interview sessions. Mire, age 25, graduated from high school and attended one year of college and is savvy enough to run his own business, the Somali House of Coffee. Mire reads, writes, and understands English, and the Court notes that Mire expressly waived his right to have an interpreter at the hearing on the instant motion. Finally, Mire does not assert that the conditions under which he was questioned were coercive in any way.

For these reasons, the Court finds that Mire was properly advised of his *Miranda* rights, including his rights under the Sixth Amendment, and that he duly waived them. Therefore, the Defendant's motion to suppress his statements on the basis of a *Miranda* violation is **DENIED**.

## II. <u>**MOTION TO SUPPRESS EVIDENCE (dkt. no. 202) AND SUPPLEMENTAL MOTION TO SUPPRESS EVIDENCE (dkt. no. 256)**</u>

In these motions, Mire seeks to suppress all evidence that was obtained during the searches of his business and his residence on the grounds that (1) the affidavit on which the warrants authorizing the searches were based contains false statements and was prepared with reckless disregard for the truth, and the warrants were not otherwise supported by probable cause; and (2) the information contained in the search warrant affidavit was stale. Each of these arguments is addressed, in turn, below.

### A. Relevant Facts

Cathinone, or "khat," is a Schedule 1 controlled substance that is grown in Africa. After conducting a lengthy investigation into suspected khat trafficking in Indianapolis, FBI Special Agent Todd Samargia appeared before Magistrate Judge Kennard Foster on February 15, 2011, seeking the issuance of search warrants to search several locations in Indianapolis, including two that related to Mire: 5636/5638 West Washington Street, which was Mire's business, the Somali House of Coffee; and 1156 Shady Terrace, Apartment C, which was represented to be Mire's residence.

The search warrant applications each were supported by the affidavit of Samargia in which he averred the following: The FBI had met with a confidential source ("CS") in April 2009 who had advised the FBI that he had knowledge of an active khat distribution network in the Indianapolis area. The information provided by the CS was "regarded as credible and

4

reliable" for the following reasons:

    (a)    CS is considered a well respected member of the relatively small (approximately 800) Indianapolis Somalian community. The Indianapolis Somalian community is narrowly drawn and difficult for individuals of another divergent nationality to penetrate. CS approached the FBI in an effort to "clean up" the community and keep people safe. CS has been in the Indianapolis area for over 10 years, and though he/she did not initially ask to be paid, he has been paid by the FBI for his continued cooperation.

    (b)    Other members of the Indianapolis Somalian community and owners of businesses within the community appear to have a high level of trust with CS and speak openly and freely about their business and various activities around CS.

    (c)    CS has purchased khat from Ahmed and other co-conspirators at the direction of law enforcement in a controlled setting.

    (d)    Much of the information provided by CS has been corroborated by your affiant's independent investigation to include records, surveillance, telephone analysis and records, wire and electronic intercepts. For example, as set forth below, CS advised that Mohamed began trafficking khat in the Indianapolis and surrounding area around 2004. Your affiant has confirmed through Choicepoint records checks and obtaining Mohamed's criminal history that Mohamed resided in Atlanta, Georgia until he was arrested in 2004, at which time he moved to Indianapolis, IN. CS advised that the khat trafficking conspiracy involved the receipt of shipments from overseas via FedEx and UPS and that the conspiracy included Columbus, OH and surrounding areas. There and several additional facts that have been corroborated, as set forth herein.

Samargia Aff. at ¶ 38 (footnote omitted). With regard to Mire specifically, Samargia averred that Mire's sister was the owner of the Somali House of Coffee, a business that is

> a gathering place for the Somalian community and many of the co-conspirators engaged in the Criminal Activity who gather and chew dry khat together. CS advised that a hole was cut in the drywall between the Somali House of Coffee and 5638 West Washington for ease of access between the two sections of the building.
>
> Law enforcement conducted surveillance at the Somali House of Coffee on numerous occasions beginning approximately July 2009 and continuing through and including January 2011. Mire and many of the conspirators were regularly observed frequenting the business in what appeared to be a social nature.

5

CS provided information about Mire and his ongoing khat distribution activity dating back to 2009 and continuing to the present. On numerous occasions beginning in 2009 and continuing through and including January 2011, CS was present at the Somali House of Coffee when Mire and other individuals gathered to chew dry khat together. On several occasions during the time frame, CS observed Mire sell khat at the business. CS also participated in three controlled purchases of khat from Mire at the Somali House of Coffee:

    a.    On August 14, 2009, CS purchased approximately 73.8 grams of khat from Mire for $40.00;
    b.    On August 24, 2009, CS purchased approximately 98 grams of khat from Mire for $40.00;
    c.    On December 22, 2010, CS purchased one bag of what is believed to be dry khat ("garabba") from Mire for $40.00.

Samargia Aff. at ¶ 51-53.

Magistrate Judge Foster issued the search warrants on February 15, 2011. The FBI subsequently learned that Mire no longer resided at 1156 Shady Terrace, Apartment C; rather he had moved to another apartment within the same complex, 1126 Shady Terrace. Accordingly, Samargia returned to Magistrate Judge Foster seeking a search warrant for Mire's new apartment; that warrant was issued on February 17, 2011.

### B. Discussion

A motion to suppress evidence obtained pursuant to a search warrant must be granted

> if the defendant can show by a preponderance of the evidence that: (1) the search warrant affiant committed perjury or acted with reckless disregard by including false statements in the warrant affidavit, and (2) upon the exclusion of those false statements from the search warrant (and inclusion of any omitted material facts) the remaining information is insufficient to establish probable cause.

*U.S. v. Taylor*, 471 F.3d 832, 838-39 (7th Cir. 2006). Mire alleges that the search warrant affidavit contained the following false statements:

> On numerous occasions beginning in 2009 and continuing through and including January 2011, CS was present at the Somali House of Coffee when Mire and other individuals gathered to chew dry khat together. On several occasions during

6

the time frame, CS observed Mire sell khat at the business. CS also participated in three controlled purchases of khat from Mire at the Somali House of Coffee.

Mire asserts that Samargia failed to adequately inquire into the reliability of the CS, and therefore acted with reckless disregard of the truth of the statements he made in his affidavit that relied upon the CS's veracity.

Mire's argument in large part depends upon his assertion that, contrary to the affidavit's statement that the CS is considered "a well respected member" of the Indianapolis Somali community, in fact the CS has a reputation for exaggeration and self-aggrandizement and generally is not taken seriously by others. In addition, the CS has been involved in several violent altercations with other members of the Somali community. Mire's assertions are supported by Abdiwahab Rashid, a member of the Indianapolis Somali community who testified at the hearing, as well as the affidavit of Salim Said, who did not testify.

The evidence submitted by Mire certainly indicates that the CS is not a universally revered member of his community. That does not, however, render the search warrant affidavit false. Rather, "[t]he Supreme Court has observed that, for a warrant affidavit to be 'truthful,' it is not necessary that every fact in the affidavit be correct; instead, the affidavit must be 'truthful in the sense that the information put forth is believed or appropriately accepted by the affiant as true.'" *U.S. v. Norris*, 640 F.3d 295, 301 (7th Cir. 2011) (quoting *Franks v. Delaware*, 438 U.S. 154, 165 (1978)). Thus, "[t]he relevant inquiry focuses on the officer's belief about the facts recounted, not the validity of the underlying facts themselves." *Id.* Samargia testified at the hearing that he believed the CS to be a reliable source and that he believed the statement in the affidavit that the CS was considered a well-respected member of the Indianapolis Somali community to be true, and the Court finds this testimony to be credible. Samargia testified that

7

the FBI was approached by the CS with information about khat trafficking and that the CS stated that he was motivated by his desire to "clean up" the Somali community. The CS gave Samargia a business card from a refugee service, and Samargia confirmed with the service that the CS did, in fact, volunteer there, helping Somali immigrants with things like obtaining drivers licenses and applying for employment. Samargia also ran routine criminal history checks and confirmed that the CS had no prior convictions. While Mire complains that Samargia checked only for convictions and failed to check for arrests or "incidents" involving the CS, this failure does not constitute reckless disregard of the truth regarding the CS's standing in the community.

Mire also argues that the statement in the search warrant affidavit that the CS conducted a controlled purchase of khat from Mire on August 24, 2009, is false because even taking the CS's version of events as true, the khat purchase was made from Hussein Ahmed, not Mire. Samargia testified that the CS went to the Somali House of Coffee on August 24, 2009, and spoke with Mire and another person about buying some khat. They indicated that they had sold all of their khat but that Hussein Ahmed was bringing them some more and the CS could purchase some of that shipment when it arrived. When Ahmed arrived, the CS purchased some khat from him. While given these facts it would have been more accurate to describe this as a purchase arranged or facilitated by Mire rather than made from him, this is a matter of semantics and a fuller explanation of the facts surrounding the purchase (as alleged by the CS) could not have had any material effect on Magistrate Judge Foster's probable cause determination. *See Norris*, 640 F.3d at 302 ("A defendant may establish a constitutional violation under *Franks* by showing an intentional or reckless omission of evidence; however, the facts withheld also must be 'material' to the probable cause determination.").

8

For the reasons set forth above, the Court finds that Samargia did not recklessly disregard the truth of the statements contained in his affidavit. Even if he had, however, Mire's motion to suppress would have to be denied because even if the statements he asserts are false are excluded, the remaining information contained in the search warrant affidavit is sufficient to establish probable cause. With regard to the controlled buy statement, the more accurate description still would have constituted corroboration of the CS's claim that Mire was involved in khat trafficking; further, the affidavit sets forth two other controlled buys from Mire.[1] With regard to the CS's standing in the community, that was not the only indicia of the reliability of the information provided by the CS to law enforcement. Rather, prior to applying for the search warrants at issue, law enforcement–using "surveillance, telephone analysis and records, and wire and electronic intercepts" described at length in the search warrant affidavit–had corroborated a great deal of information provided by the CS regarding khat trafficking activity. While much of the corroboration involved individuals other than Mire, the fact that the CS had provided accurate information about others made it reasonable for law enforcement to rely upon the CS's information about Mire. In addition, at least one wiretapped conversation involved Mire discussing the procurement of khat.

> [W]hen an informant supplies the facts in the affidavit, the probable cause determination will also turn on the informant's credibility. Some of the factors to consider in making this determination are: (1) the extent to which police corroborated the informant's statements; (2) the degree to which the informant

---

[1] Mire presented the testimony of an investigator who interviewed the CS in his home. The CS told the investigator that he had never purchased khat and specifically denied purchasing khat on the three dates the controlled buys involving Mire allegedly were made. While the Court finds the investigator's testimony to be credible, it is also irrelevant. It is wholly unsurprising that a confidential law enforcement informant would be evasive when asked about his informant activities by an unknown person.

> acquired knowledge of the events through first-hand observation; (3) the amount
> of detail provided; and (4) the interval between the date of the events and the
> police officer's application for the search warrant. We also consider whether the
> informant personally appeared and testified before the issuing judge, thus
> allowing the judge to assess his credibility. No one factor is dispositive, so a
> deficiency in some areas can be compensated by a stronger showing in others.
> Ultimately, the issuing judge must make a practical, commonsense decision
> whether, given all the circumstances set forth in the affidavit before him,
> including the veracity and basis of knowledge of persons supplying hearsay
> information, there is a fair probability that contraband or evidence of a crime will
> be found in a particular place.

*U.S. v. Bell,* 585 F.3d 1045, 1049 (7th Cir. 2009) (citations and internal quotation marks omitted). In this case, even if the assertion that the CS was a respected member of his community was excised from the search warrant affidavit, there was ample corroborative information to support the determination that the information supplied by the CS was reliable. Accordingly, even if the allegedly false statements had not appeared in the search warrant affidavit, a finding of probable cause would have been appropriate.

Finally, Mire argues that the information contained in the search warrant affidavit regarding him was stale because approximately eight weeks passed between the last information the CS provided about him–the third controlled buy–and the date of the search warrant application. Mire's argument mischaracterizes the information in the affidavit; in fact, the affidavit states that the CS observed Mire and others chewing khat at the Somali House of Coffee in January 2011 and that on February 7, 2011, the CS "informed law enforcement that Mire continues to store khat at both his home and at his mother's residence." Further, given the fact that the search warrant affidavit alleged long-term, ongoing khat trafficking, it was not unreasonable to believe that evidence of that activity would still be present even after several weeks had passed. *See U.S. v. Skinner*, 972 F.2d 171, 177 (7th Cir. 1992) (fact that the affidavit

recited [facts] "indicating ongoing, continuous activity" made the passage of time "less critical").

Similarly unavailing is Mire's argument in his supplemental motion to suppress that the information in the search warrant affidavit regarding his new apartment "was stale because the probable cause gathered by the Government over the course of a two year investigation was specific to Mire's <u>former</u> residence and there was no reason to believe that any contraband or evidence of a crime would be found at Mire's new residence." This is not a case in which law enforcement wanted to search for contraband that was seen by an informant at a location on a particular occasion; rather, the search warrant application in this case sought to search Mire's residence in order to discovery a variety of items that law enforcement would expect to find in the residence of someone engaging in on-going drug trafficking. It was entirely reasonable to expect that any such items that Mire had at his old apartment would have been moved to his new apartment. Accordingly, the information contained in the search warrant affidavit was not stale simply because it was acquired before law enforcement was aware that Mire had moved to a new apartment.

## C. Conclusion

For the reasons set forth above, the Court determines that the search warrant affidavit was not prepared with reckless disregard for the truth. Even if it were and the allegedly false statements were disregarded, the affidavit still supported a finding of probable cause to search Mire's home and business. Finally, the information pertaining to Mire in the affidavit was not stale. Accordingly, Mire's motion to suppress is **DENIED**.

SO ORDERED: 10/04/2011

*William T. Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic notification